MANOR HEALTHCARE CORP., d/b/a Americana Healthcare Center, Plaintiff-Appellant, v. NORTHWEST COMMUNITY HOSPITAL *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 83—3084

Opinion filed November 28, 1984.

Stanley A. Walton III and Albert Milstein, both of Winston & Strawn, and Andrew Tecson, both of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (William R. Wallen and Patricia Rosen, Assistant Attorneys General, of counsel), for appellees William Kempiners and Illinois Health Facilities Planning Board.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Donald L. Mrozek, Stephen R. Swofford, Michael R. Callahan, and John E. Steiner, Jr., of counsel), for other appellees.

JUSTICE WHITE delivered the opinion of the court:

Manor Healthcare Corporation, plaintiff-appellant (Manor), appeals from an order of the circuit court of Cook County affirming the decision of the Illinois Health Facilities Planning Board, defendant-appellee (the Board), to grant a certificate of need to Central Health Care Corporation, defendant-appellee (Central), to construct a 200-bed nursing home in planning area 7-I.[1]

On December 27, 1982, Central filed an application before the Board for a certificate of need to build a 200-bed skilled nursing facility adjacent to Northwest Community Hospital[2] in Arlington Heights. The application was deemed complete on January 21, 1983. On March

---

[1]The State of Illinois is divided into 11 Health Service Areas, each headed by a health service agency. Cook and Du Page counties, excluding the city of Chicago, constitute Health Service Area 7. Health Service Area 7 is subdivided into planning areas. Planning area 7-I consists of Elk Grove and Wheeling Townships. The nursing home which Central proposes to build will be located in planning area 7-I.

[2]Northwest Community Hospital is a subsidiary of Central and a defendant-appellee in the instant case. Northwest Community Hospital is a nonprofit corporation which owns and operates a general acute care, full service community hospital in Arlington Heights. The hospital does not maintain intermediate or long-term health-care facilities. Patients requiring intermediate or long-term care are transferred to skilled nursing care or intermediate nursing care facilities in the area.

31, 1983, the Board held a public hearing on the desirability of the proposed nursing facility. At the hearing and thereafter, Manor voiced objections to the grant of a certificate of need to Central. On June 2, 1983, the Board considered Central's application for a certificate of need and took action indicating its intent to deny the application. The Board expressed concern about the proposed square footage in the private rooms and the possible use of empty rooms in Northwest Community Hospital. Subsequently, Central modified the plans for the nursing facility, and on August 23, 1983, the Board approved the application.

Central's application for a certificate of need was also reviewed by the Cook-Du Page County Health Systems Agency, the health planning agency for area 7. The agency recommended that the Board approve Central's application.

On August 11, 1983, the Board issued Central a permit for construction of the 200-bed nursing facility. On August 17, 1983, Manor requested that the Board reconsider its decision to approve Central's application. The Board denied Manor's request for reconsideration on the basis that "good cause does not exist." Manor then filed a complaint for judicial review seeking, *inter alia*, stay of the Board's decision and an injunction against further construction of the nursing facility. From the order of the circuit court affirming the decision of the Board, Manor appeals.

■ We first consider defendants' contention that Manor lacks standing to seek judicial review of the Board's decision to grant Central a certificate of need. Section 11 of the Illinois Health Facilities Planning Act (Planning Act) provides:

> "Any person who is adversely affected by a final decision of the State Board may have such decision judicially reviewed." (Ill. Rev. Stat. 1983, ch. 111½, par. 1161.)

Prior to May 1982 the section read:

> "An applicant or areawide health planning organization who has exhausted all available administrative remedies and who is aggrieved by a final decision in a contested case may have such decision judicially reviewed." (Ill. Rev. Stat. 1981, ch. 111½, par. 1161.)

The section was amended as part of an effort to bring the State of Illinois in compliance with new Federal rules and regulations regarding certificates of need.[3] (House of Representatives, 82d General As-

---

[3]The State of Illinois stood to lose $465 million over the course of four years for noncompliance with the Federal rules.

sembly, April 22, 1982, at 165.) The pertinent Federal regulations provide:

> "(14) Judicial review. Provision that any person adversely affected by a final decision of a State Agency with respect to a certificate of need or an application for an exemption may, within a reasonable period of time after the decision is made (and any administrative review of it completed) obtain judicial review of it in an appropriate State court.
> \*\*\*
>> (ii) For purposes of this paragraph, 'person adversely affected' shall include the State Agency, any person who meets the definition of 'affected person' in sec. 123.401, and any person who participated in the proceedings before the State Agency." (42 C.F.R. sec. 123.410(a)(14).)
>
> "The term 'affected persons' includes, at a minimum, the applicant; the health systems agency for the health service area in which the proposed project is to be located; \*\*\* any person residing within the geographic area served or to be served by the applicant; \*\*\* health care facilities and health maintenance organizations (HMO's) located in the health service area in which the project is proposed to be located which provide services similar to the services of the facility under review \*\*\*." 42 C.F.R. sec. 123.401.

Manor owns and operates Americana Healthcare Center (Americana), a 151-bed nursing facility located in Arlington Heights. Americana provides services similar to the services Central intends to provide. We conclude that Manor will be adversely affected by construction of a 200-bed facility in the area. Accordingly, Manor has standing to seek judicial review of the decision of the Board to grant a certificate of need to Central.

■ We next consider Manor's contention that the Board's decision to grant Central a certificate of need was against the manifest weight of the evidence. Manor maintains that the bed-need figures for planning area 7-I are five beds and therefore it was error for the Board to give Central a permit for the construction of a 200-bed facility.

A proposed project which involves establishment of a new category of service, establishment of beds, and/or a substantial change in the scope or functional operation of the facility or a substantial change in the number of beds within a facility, must be consistent with the bed need as determined by the Illinois Department of Public Health (Department of Health). (Illinois Health Facilities Planning

Board Rule (Board Rule) 3B.07.C.01.)[4] Moreover, where the bed-need figures as determined by the Department of Health (appendix A) indicate that there is a need for additional nursing care beds in the area, such needed beds must be added to existing facilities unless the need shown is 200 beds or more. Illinois Health Facilities Planning Board Rule 3B.09.C.02.

At the time Central's application for a certificate of need was deemed complete, January 21, 1983, appendix A showed there was a need for 291 beds in planning area 7-I. Central's application requested permission to build a 200-bed facility. Therefore, Central's application met the bed-need criterion and was properly granted.[5]

We are aware that in June 1983, two months before the Board approved Central's application, appendix A was updated to show a need of five beds in planning area 7-I. However, Rule 3B.03.C.04 provides that "[i]f the bed need figures for a service or planning area (as shown in "Appendix A") change during a project's review because of updating the inventory, the figures which indicate the largest additional bed-need or smallest excess bed situation shall be used as the standard for review." Therefore, the bed-need figure of 291 beds was properly used by the Board in granting Central the certificate of need.

■ Next, Manor questions both the validity of Board Rule 3B.03.C.04 and the standard of review applied by the trial court in evaluating the rule.

Manor contends that a distinction must be made between administrative rules based upon professional or technical expertise to which a review standard of arbitrary, unreasonable, or capricious would apply and rules involving no expertise to which an easier review standard would apply, to wit, the standard utilized by an appellate court reviewing any trial court decision. We find such a distinction to be impractical. A reviewing court faced with the bare text of an administrative rule is in an inadequate position to decide whether the rule is based upon professional or technical expertise. We refuse to adopt this bifurcated standard and choose instead to follow the established law of Illinois that administrative regulations will be set aside by a reviewing court only if they are found to be clearly arbitrary, capricious or unreasonable. (*Begg v. Board of Fire & Police Commissioners*

[4]The bed-need figures for the planning areas are set forth in the Inventory of Health Care Facilities and Need Determination by Planning Area. This document is commonly referred to as appendix A.

[5]Manor does not contend that Central's application failed to meet any other review criterion.

(1984), 99 Ill. 2d 324, 331-32, 459 N.E.2d 925; *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 310, 319 N.E.2d 782.) Moreover, administrative regulations, like statutes, are presumptively valid, and the one attacking such regulations has the burden of establishing their invalidity. *Begg v. Board of Fire & Police Commissioners* (1984), 99 Ill. 2d 324, 332; *Midwest Petroleum Marketers Association v. City of Chicago* (1980), 82 Ill. App. 3d 494, 500-01, 402 N.E.2d 709.

Board Rule 3B.03.C.04 provides that if the bed-need figures for a planning area change during a project's review, the figures which indicate the largest additional bed-need situation shall be used as the standard for review. The rule assures the applicant that the bed-need figures considered by the Board in the reviewing process will not be lower than the bed-need figures as of the date his application is deemed complete. The result is that the applicant is encouraged to invest the necessary monies to plan a facility and prepare an application for a certificate of need. An applicant might be deterred from filing an application if the need figures were subject to constant change over the review period.

Additionally, Board Rule 3B.03.C.04 promotes timely and consistent review of the applications. An application is reviewed by several agencies over a period of months. Were the bed-need figures allowed to change constantly over this period, the reviewing agencies would not have available the same data, and their recommendations would differ greatly.

Further, Board Rule 3B.03.C.04 insures that all applications are given the same consideration. An applicant will not suffer because the Board issues certificates of need to parties whose applications were deemed complete on the same date as his or thereafter.

■ We are of the opinion that Board Rule 3B.04.C.04 furthers the purpose of the Planning Act to establish an orderly and comprehensive health care delivery system which will guarantee the availability of quality health care to the general public. We conclude that the rule is neither arbitrary nor capricious.

■ Manor next contends that Board Rule 3B.03.C.04 was inapplicable because appendix A was not "updated" but merely corrected. Prior to June 1983, the Department of Health utilized countrywide census data to determine a bed need of 291 beds for planning area 7-I. Thereafter, the Department of Health utilized township census data to determine a bed need of five beds for the area. The change to township data did not represent correction of the data previously utilized and therefore a correction of the bed-need inventory based

thereon. The countywide census data was not incorrect. It was merely less precise in reflecting the bed need for planning area 7-I. The change to township data represented a change of data base for the Department's calculations. We believe that such a change constituted an "updating" of appendix A.

Since we find that appendix A was updated during the review period, we conclude that Board Rule 3B.03.C.04 was applicable and that the Board properly utilized the figure of 291 beds as the standard for review.

■ Lastly, Manor contends that appendix A is a rule which was not published in conformance with the Illinois Administrative Procedure Act (APA) (Ill. Rev. Stat. 1983, ch. 127, par. 1001 *et seq.*) and is therefore invalid. Manor concludes that the Board erred in utilizing the 291 bed-need figure contained in appendix A as a standard of review for Central's application.

We are of the opinion that appendix A is not a rule within the meaning of the APA. The APA defines a rule as "each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy ***." (Ill. Rev. Stat. 1983, ch. 127, par. 1003.09.) Appendix A does not implement, apply, interpret, or prescribe law or policy in the area. Rather, appendix A is a statistic showing the bed-need inventory for the area. Appendix A merely applies formulae set forth in Board Rule 3B.09.B.03 to determine the bed-need figure for each planning area. We conclude that appendix A did not have to adopted in conformance with the APA.

For the aforementioned reasons the judgment of the circuit court of Cook County is affirmed.

RIZZI, P.J., and McGILLICUDDY, J., concur.