FIFTH DIVISION

July 17, 1998

No. 1-96-3919

DIMENSIONS MEDICAL CENTER, LTD., ACCESS ) Appeal from the

CENTER FOR HEALTH, LTD. and ACCESS ) Circuit Court of

HEALTH CENTER, LTD., ) Cook County.

)

Plaintiffs-Appellees, )

)

v. ) No. 96 CH 2107

)

SUBURBAN ENDOSCOPY CENTER, SUBURBAN )

ENDOSCOPY ASSOCIATES, INC., an Illinois )

Corporation, ENDOSCOPY CENTER )

AFFILIATES, INC., a Delaware )

Corporation, SHEA, PAIGE & ROGAL, INC., )

an Illinois Corporation, )

)

Defendants, )

)

and )

)

ILLINOIS HEALTH FACILITIES PLANNING )

BOARD, JOHN LUMPKIN, M.D., Director, )

and ILLINOIS DEPARTMENT OF PUBLIC )

HEALTH, ) Honorable 

) 
Dorothy Kinnaird
,

Defendants-Appellants. ) Judge Presiding.

JUSTICE HOURIHANE
 delivered the opinion of the court:

In February 1996, Suburban Endoscopy Center
 received approval from the Illinois Health Facilities Planning Board to begin operation of an ambulatory surgical treatment center, in Mount Prospect, dedicated solely to gastroenterological procedures.  Plaintiffs Dimensions Medical Center, Ltd., Access Center for Health, Ltd. and Access Health Center, Ltd. filed a timely complaint for administrative review in the circuit court challenging the Planning Board's approval.  Following a hearing, the circuit court reversed the decision of the Planning Board.  On appeal, defendants Illinois Health Facilities Planning Board, John Lumpkin, M.D., Director, and Illinois Department of Public Health contend that (1) plaintiffs lacked standing to challenge the Planning Board's approval and (2) the circuit court erred in finding that the aforementioned approval was against the manifest weight of the evidence.  For the reasons that follow, we reverse.

BACKGROUND

In 1995, Suburban applied to the Planning Board for approval to begin operation of an ambulatory surgical treatment center, in Mount Prospect, dedicated solely to gastroenterological procedures.  Pursuant to section 8 of the Illinois Health Facilities Planning Act (Act)(20 ILCS 3960/8 (West 1996)), Suburban's application was reviewed by the Illinois Department of Public Health.  As a part of that review, a public hearing was conducted on the advisability of such a treatment center.  A representative of plaintiffs attended that hearing and objected to defendant's application on several grounds.  Among the objections advanced was the failure of Suburban's application to adequately address certain of the "necessary criteria" used in reviewing such applications, as set forth within the Illinois Health Care Facilities Plan (Plan)(77 Ill. Admin. Code §1100.10 
et seq
. (1996)).  Also advanced was the fact that an underutilization of current health care facilities existed within the relevant planning area.  Plaintiffs' representative further argued that any additional ambulatory surgical treatment centers would have a "distinct negative impact" upon plaintiffs, as potential patients will be drawn from their facilities "which already provide the services."  Specifically, plaintiffs' representative argued that "Dimensions Medical Center provides a full range of out-patient surgical procedures, including [e]ndoscopy."

Several prior Department reports, in which similar applications were deemed inadvisable due to the underutilization of existing area health care facilities, were also proffered by plaintiffs' representative during the hearing.  One such report concerned an application of Access Center for Health, Ltd. and Access Health Center, Ltd. for approval to expand the surgical procedures offered in their single-specialty treatment center.  An endoscopy procedure was among the surgical procedures for which approval was requested.

Dr. David Sales and Ira Rogal also testified at the public hearing; Dr. Sales, in his capacity as Suburban's medical director, and Rogal, as a consultant.  Dr. Sales stated that approval for Suburban's proposed treatment center "will offer significant patient advantages," including specialization, state-of-the-art equipment, increased "opportunities for cross[-]education and specialized quality assurance" as well as substantially lower costs.

Rogal briefly described Suburban's proposed treatment center, stating that it was intended to be "a single specialty ambulatory surgical treatment center" with two procedure rooms, in which only gastroenterology procedures would be performed.  Rogal further stated that Suburban's impact upon other area hospitals and ambulatory surgical treatment centers would be "minimal," while the total health care savings would be substantial.

Following that hearing, the Department issued a report to the Planning Board regarding Suburban's application.  That report found Suburban's application 
was not in conformance with three of the "necessary criteria" outlined within the aforementioned Plan.  Specifically, the Department found Suburban's application did not meet the requirements contained within sections 1110.230(e), (f) and 1110.1540(e)(77 Ill. Admin. Code §§1110.230(e), (f) and 1110.1540(e)(1996)), all of which related, in some manner, to the need for such a treatment center.  Indeed, underlying each of those unsatisfactory assessments was the Department's finding that three area hospitals had "underutilized surgery suites."  Also included with the Department's report were completed questionnaires used to survey 15 other area health care facilities regarding their 
respective charges for certain surgical procedures.  Those charges were compared with those proposed by Suburban.  Such a questionnaire was sent to Dimensions, who returned it with a notation simply stating that "Dimensions Medical Center proposes to provide these and other endoscopy services to the patients of Suburban Endoscopy Center below their projected charges."  However, because the Department needed specific charges from each area health care facility, it consulted a prior application from Dimensions, in which the latter listed its charges for the relevant surgical procedures.  Those charges were used by the Department within its report.  No questionnaire was sent to Access Center for Health, Ltd. or Access Health Center, Ltd.

Suburban's application was thereafter considered by the Planning Board in February 1996.   Therein, the Planning Board was presented with the Department's report.  It was also advised that none of the three aforementioned area hospitals objected to Suburban's proposed treatment center, and that one was not, in fact, within the relevant planning area.

Representatives of Suburban were also given the opportunity to address the Planning Board.  Billie Paige, another consultant to Suburban, explained that the Department's finding of "underutilized surgery suites" within the relevant planning area was "flawed" in that no distinction was made between endoscopy rooms and general surgery rooms.  Rather, all rooms were considered together, which, according to Paige, inaccurately reflected the utilization rate of endoscopy rooms.

Dr. Sales also addressed the Planning Board, and reiterated, by way of anecdotal information, that the Department's finding of "underutilized surgery suites" was "flawed."  He also listed the additional benefits Suburban's proposed treatment center would offer, as he had at the public hearing, and further pledged to keep charges constant for the next two years.

Following a series of questions from various members of the Planning Board, Suburban's application was approved.

On March 1, 1996, plaintiffs filed a complaint in administrative review, alleging, 
inter alia
, that the Planning Board's approval was against the manifest weight of the evidence, and that Suburban's application did not satisfy certain administrative criteria.  On October 10, 1996, following a determination that plaintiffs had standing to challenge the Planning Board's approval, the circuit court reversed the decision of the Planning Board.  The circuit court did so on the bases that Suburban's application failed to satisfy certain of the "necessary criteria" set forth within the Plan.  According to the circuit court, Suburban's application, in addition to the three unmet criteria enumerated within the Department's report, also failed to satisfy three other such criteria; specifically, sections 1110.230(a)(1), (d) and (e)(77 Ill. Admin. Code §§1110.230(a)(1), (d) and (e)(1996)).  The circuit court also found that the Planning Board lacked sufficient evidence.

DISCUSSION

I.

Defendants first contend that the circuit court erred in determining that plaintiffs had standing to challenge the Planning Board's approval.  According to defendants, plaintiffs lacked standing as the administrative record failed to establish that any of the three actually performed gastroenterological procedures.  Plaintiffs respond that this contention has been waived by defendants' failure to raise it during the administrative proceedings, and that, in any event, they have standing by virtue of their participation in the public hearing before the Department, and because they were "adversely affected" by the Planning Board's approval.

Defendants have not waived this contention.  Simply stated, the defense that plaintiffs lacked standing to challenge the Planning Board's approval would not lie until plaintiffs, in fact, filed their complaint for administrative review in the circuit court.  Indeed, raising such an defense prior to the commencement of the circuit court action would have been premature.  See 
Velazquez v. Soliz
, 141 Ill. App. 3d 1024, 1032, 490 N.E.2d 1346 (1986); 
Bronstein v. Kalcheim & Kalcheim, Ltd.
, 90 Ill. App. 3d 957, 959-60, 414 N.E.2d 96 (1980); 
Northtown Bank of Decatur v. Becker
, 45 Ill. App. 2d 112, 126-27, 195 N.E.2d 404 (1964), 
aff'd
, 31 Ill. 2d 529, 202 N.E.2d 540 (1964).

Here, the circuit court found that plaintiffs had standing to challenge the Planning Board's approval; Dimensions, pursuant to section 1180.40(e)(5)(77 Ill. Admin. Code §1180.40(e)(5)(1996)), and Access Center for Health, Ltd. and Access Health Center, Ltd., pursuant to section 1180.40(e)(6)(77 Ill. Admin. Code §1180.40(e)(6)(1996)).  That determination, however, was in error, for sections 1180.40(e)(5) and (6), properly considered, do not provide standing for plaintiffs to challenge the Planning Board's approval.

Sections 1180.40(e)(5) and (6) define certain health care facilities as "adversely affected persons."  77 Ill. Admin. Code §§1180.40(e)(5), (6)(1996).  But those sections do so within the context of limiting the number of participants to an administrative hearing following the 
denial
 of an application by the Planning Board.  77 Ill. Admin. Code §1180.10 (1996).  The application submitted by Suburban was approved.  Accordingly, those sections have no relevance, and thus fail to provide plaintiffs with standing to challenge the Planning Board's approval.

Nor does participation in the public hearing, alone, serve to establish such standing.  See 
Citizens for the Preservation of Knox County, Inc. v. Department of Mines and Minerals
, 149 Ill. App. 3d 261, 264, 500 N.E.2d 75 (1986); see also 
Kemp-Golden v. Department of Children & Family Services
, 281 Ill. App. 3d 869, 876-77, 667 N.E.2d 688 (1996); 
Castleman v. Civil Service Commission of the City of Springfield, Illinois
, 58 Ill. App. 2d 25, 32, 206 N.E.2d 514 (1965).

Instead, only those persons "adversely affected by a final decision of the [Planning] Board may have such a decision judicially reviewed."  20 ILCS 3960/11 (West 1996).  In 
Condell Hospital v. Illinois Health Facilities Planning Board
, 161 Ill. App. 3d 907, 515 N.E.2d 750 (1987), 
aff'd
, 124 Ill. 2d 341, 530 N.E.2d 217 (1988), this court held that a "competing health care facility" was an "adversely affected" person, and thus had standing to challenge a final decision of the Planning Board granting a permit for construction of a new hospital.  161 Ill. App. 3d at 933; see also 
Manor Healthcare Corp. v. Northwest Community Hospital
, 129 Ill. App. 3d 291, 293-94, 472 N.E.2d 492 (1984).  Accordingly, plaintiffs may be said to have standing to challenge the Planning Board's approval, if within the administrative record, they are shown to be "competing health care facilities."

No serious contention may be maintained that either Access Center for Health, Ltd. or Access Health Center, Ltd. is a "competing health care facility."  Indeed, as the administrative record makes clear, neither has ever performed any gastroenterological procedures.  Nor could they, for they jointly operate a single-specialty ambulatory surgical treatment center limited to pregnancy terminations.  Access Center for Health, Ltd. and Access Health Center, Ltd., therefore, lacked standing to challenge the Planning Board's approval.

The same, however, cannot be said of Dimensions.  Here, the administrative record makes clear that Dimensions, unlike Access Center for Health, Ltd. and Access Health Center, Ltd., is a multi-specialty ambulatory surgical treatment center.  In addition, the Department's report lists Dimensions as a provider of certain endoscopy procedures.  Moreover, plaintiffs' representative testified during the public hearing that Dimensions "provides a full range of outpatient surgical procedures, including [e]ndoscopy."  Dimensions is, therefore, a "competing health care facility," and thus duly entitled to challenge the Planning Board's approval.

II.

Next, defendants contend that the circuit court erred in determining that the Planning Board's approval was against the manifest weight of the evidence.

Pursuant to section 3-110 of the Code of Civil Procedure, "[t]he findings and conclusions of an administrative agency on questions of fact shall be held to be 
prima facie
 true and correct on appeal."  735 ILCS 5/3-110 (West 1996).  In reviewing an administrative agency's decision, a court is to examine the record before it and determine whether that decision is against the manifest weight of the evidence.  
Schweig v. Schacht
, 276 Ill. App. 3d 311, 315, 657 N.E.2d 1152 (1995); 
Hall v. Board of Education of the City of Chicago
, 227 Ill. App. 3d 560, 574, 592 N.E.2d 245 (1992).  
If the administrative record contains any evidence which fairly supports an administrative agency's decision, that decision is not against the manifest weight of the evidence and must be sustained.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 568 N.E.2d 1319 (1992); 
Commonwealth Edison Co. v. Property Tax Appeal Board
, 102 Ill. 2d 443, 467, 468 N.E.2d 948 (1984).

Of the three additional "necessary criteria" found unmet by the circuit court, two, sections 1110.230(a)(1) and (d)(77 Ill. Admin. Code §§1110.230(a)(1), (d)(1996)), were amended during the pendency of this action.  The circuit court, however, refused to apply sections 1110.230(a)(1) and (d), as amended.  That was error.

Pursuant to 
First of America Trust Co. v. Armstead
, 171 Ill. 2d 282, 664 N.E.2d 36 (1996), those intervening amendments were to have been applied unless to do so would have interfered with a "vested right."  171 Ill. 2d at 290.  Application of sections 1110.230(a)(1) and (d), as amended, would not have interfered with a "vested right," for, at the time those amendments became effective, a final judgment had not yet been entered.  
Bates v. Board of Education, Allendale Community Consolidated School District, No. 17
, 136 Ill. 2d 260, 269, 555 N.E.2d 1 (1990).  As such, application of amended sections 1110.230(a)(1) and (d) was required.

As amended, section 1110.230(a)(1) required the following:

"(a) Location--Review Criterion.

(1) The applicant must document that the primary purpose of the proposed project will be to provide care to the residents of the planning area in which the proposed project will be located.  Documentation for existing facilities shall include patient origin information for all admissions for the last 12 months.  Patient origin information must be presented by zip code and be based upon the patient's legal residence other than a health care facility for the last six months immediately prior to admission.  For all other projects for which referrals are required to support the project, patient origin information for the referrals is required.  Each referral letter must contain a certification by the health care worker physician that the representations contained therein are true and correct.  A complete set of the referral letters with original notarized signatures must accompany the application for permit."  77 Ill. Admin. Code §1110.230(a)(1)(1996).

Here, several physician referral letters detailing the number of gastroenterological procedures performed by Suburban's principals were included as a part of Suburban's application.  All of the "patient origin information" therein was presented by zip code, and each letter was properly certified and notarized.  As such, Suburban's application was in due conformance with the section 1110.230(a)(1), as amended.
(footnote: 1)
Prior to amendment, section 1110.230(d) required an applicant to document "an absence of two or more serious violations in each facility operated during the last five years."  77 Ill. Admin. Code §1110.230(d)(1994).  After amendment, section 1110.230(d) provided, in pertinent part, as follows:

(d) Background of Applicant--Review Criterion.

(1) The applicant shall demonstrate that it is fit, willing and able, and 
has the qualifications, background and character to adequately provide a proper standard of health care service for the community
.  In evaluating the fitness of the applicant, the State Board shall consider whether adverse action has been taken against any health care facility owned or operated by the applicant, directly or indirectly, within the last three years preceding the filing of the application."  (Emphasis in original.)  77 Ill. Admin. Code §1110.230(d)(1)(1996).

Here, a letter from Endoscopy Center Affiliates, Inc., Suburban's general partner, explained that "no adverse action" has ever been taken against North Shore Endoscopy Center, the only other health care facility owned and operated by Endoscopy Center Affiliates, Inc.  As such, Suburban's application was in due conformance with section 1110.230(d), as amended.

The third of the three additional "necessary criteria" found unmet by the circuit court, section 1110.230(e), concerned alternatives to the proposed project and required certain cost comparison documentation.  Specifically, that section provided as follows:

"(e) Alternatives to the Proposed Project--Review Criterion.

The applicant must document that the proposed project is the most effective or least costly alternative.  Documentation shall consist of a comparison of the proposed project to alternative options.  Such a comparison must address issues of cost, patient access and financial benefits in both the short and long-term.  Alternatives must include, but are not limited to[,] purchase of equipment, leasing or utilization (by contract or agreement) of other facilities, development of freestanding settings for service and alternate settings within the facility."  77 Ill. Admin. Code §1110.230(e)(1996).

As a part of its application Suburban included a comparison between the proposed charge for its most expensive gastroenterological procedure and the highest and lowest corresponding charges of surrounding area health care facilities.  Suburban's proposed charge was, by far, the lowest.  In addition to that information, the Planning Board also had before it completed questionnaires from other area health care facilities, each detailing the various gastroenterological procedure charges at those facilities.  Suburban's proposed charges were still, by far, the lowest.

The circuit court found that evidence insufficient for purposes of determining Suburban's conformance with section 1110.230(e).  It clearly was not.

 As previously discussed, three other "necessary criteria" were also found unmet by 
both
 the Department and the circuit court.  Of those three, each related, in some manner, to the need for such a treatment center.  First among that number, section 1110.230(e), concerned alternatives.  77 Ill. Admin. Code §1110.230(e)(1996).  According to the Department, Suburban failed to demonstrate that its proposed treatment center would increase consumer access to gastroenterological procedures in light of the underutilization of certain other health care facilities.  In fact, in the opinion of the Department, "the best alternative [was] to utilize existing resources."

The existence of such underutilized health care facilities within the planning area also lead the Department and circuit court to find deficiencies in two other "necessary criteria;" one, contained within section 1110.230(f)(77 Ill. Admin. Code §1110.230(f)(1996)), and the other, in section 1110.1540(e)(77 Ill. Admin. Code §1110.1540(e)(1996)).  Specifically, the Department and the circuit court found that an underutilization of "surgical suites" at three hospitals within the planning area demonstrated a lack of need for such a treatment center.

However, during the Planning Board meeting in February 1996, both Billie Page and Dr. Sales explained that the Department's finding of "underutilized surgical suites" was "flawed" in that the report did not distinguish between endoscopy rooms and general surgical rooms.  According to them, considering all rooms together 
understated
 the utilization rate of those dedicated solely to gastroenterological procedures.  The Planning Board was also advised during that meeting that two of the aforementioned three hospitals did not object to Suburban's application, and that the other was not, in fact, within the planning area.

As such, the record on appeal contains evidence which fairly supports the Planning Board's approval.

Moreover, even assuming the Planning Board was not persuaded by such supplemental information, its approval still cannot be said to have been against the manifest weight of the evidence, for as section 1130.660 allows, "[t]he failure of a project to meet one or more review criteria *** shall not prohibit the issuance of a permit."  77 Ill. Admin. Code §1130.660 (1996).  In 
Access Center for Health, Ltd. v. Illinois Health Facilities Planning Board
, 283 Ill. App. 3d 227, 669 N.E.2d 668 (1996), this court held that an applicant's failure to comply with similar "necessary criteria" could be excused by the Planning Board pursuant to section 1130.660.  283 Ill. App. 3d at 239.  As such, it cannot now be said that the Planning Board's approval was against the manifest weight of the evidence.

CONCLUSION

For the aforementioned reasons, the judgment of the circuit court is reversed

Reversed.

HOFFMAN, P.J., and SOUTH, J., concur.

FOOTNOTES
1:
Dimensions relies upon 
Springwood Associates v. Illinois Health Facilities Planning Board
, 269 Ill. App. 3d 944, 646 N.E.2d 1374 (1995), in support of its contention that Suburban failed to comply with the requirements of section 1110.230(a)(1).  That reliance, however, is misplaced, for 
Springwood Associates
 predates the amendment to section 1110.230(a)(1).  Indeed, that court applied the former version of that section.  269 Ill. App. 3d at 948-49.  
Springwood Associates
 is, therefore, inapposite.