# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Ahmad v. Illinois Health Facilities & Services Review Board*, 2013 IL App (5th) 120004

| | |
|---|---|
| Appellate Court Caption | MAQBOOL AHMAD and MARION EYE CENTERS, LTD., Plaintiffs-Appellants, v. ILLINOIS HEALTH FACILITIES AND SERVICES REVIEW BOARD; THE DEPARTMENT OF PUBLIC HEALTH; CIRURGIA CENTRO, LLC; MARION HOLDINGS, LLC; RONALD E. OSMAN, Individually; DALE GALASSIE, Chairman of the Illinois Health Facilities and Services Review Board; RONALD S. EAKER, Member of the Illinois Health Facilities and Services Review Board; ALAN GREIMAN, Member of the Illinois Health Facilities and Services Review Board; JOHN HAYES, Member of the Illinois Health Facilities and Services Review Board; DAVID PENN, Member of the Illinois Health Facilities and Services Review Board; JAMES J. BURDEN, Member of the Illinois Health Facilities and Services Review Board; ROBERT J. HILGENBRINK, Member of the Illinois Health Facilities and Services Review Board; KATHRYN J. OLSON, Member of the Illinois Health Facilities and Services Review Board; and RICHARD H. SEWELL, Member of the Illinois Health Facilities and Services Review Board, Defendants-Appellees. |
| District & No. | Fifth District<br>Docket No. 5-12-0004 |
| Rule 23 Order filed<br>Motion to publish<br>granted<br>Opinion filed | July 1, 2013<br><br>August 23, 2013<br>August 23, 2013 |

| | |
|---|---|
| Held | Plaintiff's complaint for judicial review of the Illinois Health Facilities and Services Review Board's approval of another eye surgery center's purchase of a controlling interest in the surgical center in which plaintiff held a 30% interest and performed most of the eye surgeries was properly dismissed on the ground that plaintiff lacked standing, notwithstanding the fact that plaintiff had entered into a "letter of intent" to purchase the controlling interest two months before the competitor entered into a contract to purchase the interest and received the Board's approval, since plaintiff made no argument that he operated a competing health care facility giving rise to judicial review under section 11 of the Illinois Health Facilities Planning Act. |
| (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Williamson County, No. 11-MR-137; the Hon. Brad K. Bleyer, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | John Womick, of Womick Law Firm, Chtrd., of Herrin, for appellants. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Timothy K. McPike and Carl J. Elitz, Assistant Attorneys General, of counsel), and Roland E. Osman, of Ronald E. Osman & Associates, Ltd., of Marion, for appellees. |

| | |
|---|---|
| Panel | JUSTICE CHAPMAN delivered the judgment of the court, with opinion. Presiding Justice Spomer and Justice Wexstten concurred in the judgment and opinion. |

**OPINION**

¶ 1   The issue in this appeal involves a surgical center located in Marion, Illinois. In 2010, controlling interest in the center was owned by Surgical Care Affiliates. Dr. Maqbool Ahmad entered into an agreement with Surgical Care Affiliates, dated December 2, 2010, to purchase a controlling interest in the surgical center. Surgical Care Affiliates then entered into another agreement on January 27, 2011, with attorney Ronald E. Osman, the sole owner of Cirurgia Centro, LLC, to purchase the controlling interest in the center. Cirurgia Centro then sought

and received the required approval by the Illinois Health Facilities and Services Review Board (Board) for change of ownership. Dr. Ahmad and Marion Eye Centers asked for judicial review of that administrative approval. The Board filed a motion to dismiss the complaint on the basis that the plaintiffs lacked standing to challenge its decision. The trial court agreed and dismissed the complaint. Dr. Ahmad and Marion Eye Centers (Dr. Ahmad's company) appeal that dismissal.

¶ 2                                            FACTS

¶ 3        The Surgical Center of Southern Illinois is an Illinois-licensed ambulatory surgical treatment center (surgical center) located in Marion, Illinois. The Surgical Care Affiliates, LLC, owned the controlling interest in the surgical center. Dr. Maqbool Ahmad is an eye surgeon whose practice is Marion Eye Centers. Dr. Ahmad owned 30% of the surgical center. The physicians in Ahmad's practice, Marion Eye Centers, performed the majority of their surgeries at the surgical center. Ronald Osman is an attorney and the owner of Cirurgia Centro (Cirurgia). Ahmad and Osman both wanted to purchase Surgical Care Affiliates' controlling interest in the surgical center. Dr. Ahmad entered into a "letter of intent" agreement with Surgical Care Affiliates on December 2, 2010, to purchase the controlling interest in the surgical center. Osman entered into a contract with Surgical Care Affiliates on January 27, 2011, for the purchase of the same interest. The contract for the sale to Osman was contingent upon Cirurgia's receipt of approval of an exemption for change of ownership from the Illinois Health Facilities and Services Review Board.

¶ 4        Cirurgia filed its request for an exemption for the change of ownership with the Board. Pursuant to the Illinois Health Facilities Planning Act, a public hearing can be requested to allow the public to make written or oral comment on the change of ownership request. 20 ILCS 3960/8.5 (West 2010). That hearing was requested and was held on April 5, 2011. On June 28, 2011, the Board approved Cirurgia's request, over the objections of Dr. Ahmad. Cirurgia's purchase of the surgery center was finalized on June 30, 2011.

¶ 5        Dr. Ahmad and Marion Eye Centers, Ltd., filed their complaint seeking judicial review of the Board's decision on August 1, 2011. They asked the court to reverse the Board's decision or alternatively remand the matter to the Board to be treated as a "Certificate of Need" as opposed to the "Certification for an Exemption." The defendants filed motions to dismiss on the basis that neither plaintiff had standing to file the complaint. On November 17, 2011, the trial court dismissed the complaint on the basis of standing, finding that the plaintiffs were not "adversely affected persons," as required by section 11 of the Illinois Health Facilities Planning Act (20 ILCS 3960/11 (West 2010)). The plaintiffs' request for reconsideration of the dismissal was denied on December 19, 2011. From these two court orders, Dr. Ahmad and Marion Eye Centers appeal.

¶ 6                                   LAW AND ANALYSIS

¶ 7        On appeal from a trial court's involuntary dismissal of a complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)), we must determine "whether the existence of a genuine issue of material fact should have precluded the

dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." (Internal quotation marks omitted.) *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10, 708 N.E.2d 1140, 1144 (1999). Our review is *de novo*. *In re Estate of Mayfield*, 288 Ill. App. 3d 534, 542, 680 N.E.2d 784, 789 (1997).

¶ 8 When there is a proposed change in ownership of an Illinois-licensed health care facility, the buyer "must submit an application for exemption to HFPB [Illinois Health Facilities and Services Review Board], submit the required application processing fee and receive approval from HFPB." 77 Ill. Adm. Code 1130.520(a), amended at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006); see also 20 ILCS 3960/6 (West 2010). Because the proposal to purchase the surgical center only required a change of ownership, the Board does not require the issuance of a permit–only a certificate. 20 ILCS 3960/6(b) (West 2010). The process for obtaining a certificate for change of ownership is streamlined. There is no right to a rehearing of the Board's decision. Even if the Board chairman refers the application to the full Board, the applicable statutes and regulations do not require a hearing prior to the full Board voting on the application. "An exemption shall be approved when information required by the Board by rule is submitted." *Id.* The process is simple with approval mandated if the applicant properly completes the written application. After the application is submitted, the Department of Public Health reviews the application to determine if it is complete. 20 ILCS 3960/8.5(a) (West 2010). Legal notices of the requested exemption certificate must be published by the Department of Public Health and posted on the website for the Health Facilities and Services Review Board. *Id.*; 77 Ill. Adm. Code 1130.520(c), amended at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006). Cirurgia followed this procedure before finalizing its purchase of the surgical clinic.

¶ 9 Dr. Ahmad and Marion Eye Centers, Ltd., were not parties to the administrative process. Pursuant to the Illinois Health Facilities Planning Act (Act), after the application is filed and is under review by the Board, the Board must provide an opportunity for a public hearing. The Act requires the Board to hold the requested public hearing at least 15 days but no more than 30 days after the publication date of the legal notice. 20 ILCS 3960/8.5(b) (West 2010). In this case, the public hearing was requested and held on April 5, 2011. At that hearing, the plaintiffs and other speakers appeared and addressed the Board.

¶ 10 After the application process and public hearing (if requested) are complete, the Board chairman must approve, deny, or refer the exemption request to the Board no more than 60 days after receipt of transcribed public hearing comments. 77 Ill. Adm. Code 1130.560(a), amended at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006). If the chairman refers the exemption to the Board, the Board shall "issue an exemption or advise the applicant or exemption holder in writing that the application is denied and is not in conformance with exemption requirements." 77 Ill. Adm. Code 1130.560(b), amended at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006). If the application is granted, the process ends.

¶ 11 The applicant is not allowed to seek an administrative hearing unless the applicant's application for a certificate of exemption is denied. 20 ILCS 3960/10 (West 2010). The administrative hearing will be before a hearing officer, and a final determination will be made by the Board. *Id.* This statute is enacted by the administrative regulation as follows:

"A person whose *** certificate of recognition is denied *** shall be afforded an opportunity for a hearing before a hearing officer." 77 Ill. Adm. Code 1130.1010(b), adopted at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006).

¶ 12    The conflict in this case involves the issue of whether an "interested person" who participated in a public hearing has the regulatory or statutory right to pursue review in the courts when the application for a certificate of exemption is approved. The plaintiffs contend that they are allowed to do so because they meet the regulatory definition of an "adversely affected" person. See 77 Ill. Adm. Code 1130.1040(e), adopted at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006).

¶ 13    The categories of "adversely affected" persons were created by the agency in order to limit "the number of participants to an administrative hearing following the *denial* of an application by the Planning Board." (Emphasis in original.) *Dimensions Medical Center, Ltd. v. Suburban Endoscopy Center*, 298 Ill. App. 3d 93, 98, 697 N.E.2d 1231, 1234-35 (1998) (citing 77 Ill. Adm. Code 1180.10 (1996)). Only intervenors, who are defined as "adversely affected" persons, can participate in Board proceedings and have the right to appeal. 77 Ill. Adm. Code 1130.1040(e), adopted at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006).

¶ 14    Section 1130.1040(e) of the applicable regulation lists nine categories of persons defined as "adversely affected." 77 Ill. Adm. Code 1130.1040(e), adopted at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006). The plaintiffs argue that they meet the criteria of two of the nine categories–that they are "person[s] residing within the geographic area served *** by the applicant" and that they are "person[s] who regularly use[ ] health care facilities within that geographic area." 77 Ill. Adm. Code 1130.1040(e)(3), (e)(4), adopted at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006).

¶ 15    We have reviewed the language of the regulation and find that the plaintiffs' citation to this regulatory section is in error. The categories of "adversely affected" persons apply only to parties to proceedings before the Health Facilities Planning Board–not to judicial review. 77 Ill. Adm. Code 1130.1040(a), adopted at 30 Ill. Reg. 14852 (eff. Sept. 1, 2006). Judicial review of a final decision of the Board is authorized by section 11 of the Illinois Health Facilities Planning Act. 20 ILCS 3960/11 (West 2010).

¶ 16    The defendants claim that the plaintiffs have no standing to seek judicial review of the administrative order because an order granting a petition is not a final order. Although we ultimately find that the plaintiffs lack standing, we disagree with the basis of the defendants' argument. There is a line of cases holding that the decision to grant a permit or an application is a final decision in cases of competing health care facilities.

¶ 17    We start with *Manor Healthcare Corp. v. Northwest Community Hospital*, 129 Ill. App. 3d 291, 472 N.E.2d 492 (1984), the first of these cases. Manor Healthcare was the operator of a nursing home facility and sought judicial review of the Health Facilities Planning Board's decision to grant a certificate of need to Central Health Care Corporation allowing Central to build a nursing home in the same geographical area. *Id.* at 292, 472 N.E.2d at 493. Manor asked the Board to reconsider its decision to grant the application. *Id.* at 293, 472 N.E.2d at 494. The Board denied this request. *Id.* The trial court affirmed the Board's decision. *Id.* On appeal, the defendants contended that Manor had no standing to seek judicial

review. The appellate court considered the language of the regulation and also considered language of the federal regulations dealing with "affected persons." *Id.* at 294, 472 N.E.2d at 494. The appellate court found that Manor provided similar services to that proposed by Central, and therefore Manor would be adversely affected if the new site was built, and thus had standing to seek judicial review.[1] *Id.*

¶ 18    In *Condell Hospital v. Health Facilities Planning Board*, 161 Ill. App. 3d 907, 515 N.E.2d 750 (1987), *aff'd*, 124 Ill. 2d 341, 530 N.E.2d 217 (1988), the Health Facilities Planning Board granted an application to build a new hospital. *Id.* at 910-13, 515 N.E.2d at 753-55. Several hospitals in the area filed petitions for rehearing with the Board, which were denied. *Id.* at 914-17, 515 N.E.2d at 755-57. The hospitals filed a complaint seeking judicial review, which was dismissed in the trial court. *Id.* at 922-27, 515 N.E.2d at 760-64. The appellate court noted that the appellant-hospitals had standing to seek judicial review. *Id.* at 933, 515 N.E.2d at 767-68. The court concluded that these appellants were "adversely affected" persons because the hospitals represented competing health care facilities. *Id.* (citing *Manor Healthcare Corp.*, 129 Ill. App. 3d at 294, 472 N.E.2d at 494).

¶ 19    Both *Manor Healthcare Corp.* and *Condell Hospital* are distinguishable from the facts presented in this case. Both cases involved certificates of need, rather than certificates of exemption, and were presented to the court at a time when rehearings were allowed in the administrative agency. Prior to May 1, 1990, the Health Facilities Planning Board allowed motions for reconsideration of its grant or denial of applications for certificates and permits. See 77 Ill. Adm. Code Part 1220 (1984). That right was repealed effective May 1, 1990. 14 Ill. Reg. 5172 (eff. May 1, 1990). The repealed right to a rehearing at the administrative level has not been reinstated or otherwise replaced. When the Board grants an application for certification of exemption, the administrative process ends. Because the administrative process ends when the certificate of exemption is approved, logically, that order is final, even though the administrative regulations do not specifically define an order granting an application or an exemption as a "final order."

¶ 20    We find that a more recent case, decided after the 1990 modification of the regulation,

---

[1]*Manor Healthcare Corp.* discussed the Illinois legislators' amendment of what is now section 11 of the Illinois Health Facilities Planning Act (20 ILCS 3960/11 (West 2010)), which brought the state in compliance with federal rules and regulations regarding judicial review of certificates of need and applications for exemptions. The amendment of section 11 allowed "adversely affected" persons to seek judicial review of a final decision of the State Board. The phrase "adversely affected" person was also used in the federal regulation. See 42 C.F.R. § 123.410(a)(14) (1985). The Code of Federal Regulations had an expanded definition of "affected persons," which included "any person residing within the geographic area served or to be served by the applicant." 42 C.F.R. § 123.401 (1985). Ahmad cites to this federal regulation in support of his contention that he is an "adversely affected" person who is allowed to seek judicial review. At a later date in the mid-1980s, subsequent to the filing of the opinion in *Manor Healthcare Corp.*, this federal regulation was repealed in its entirety. The regulation is no longer applicable and therefore has no effect upon Ahmad's alleged status as an "adversely affected" person as previously defined by the federal agency.

is helpful and presents facts similar to this case, where upon grant of the application, the administration process concluded. In *Dimensions Medical Center, Ltd. v. Suburban Endoscopy Center*, three hospitals filed a complaint in the circuit court seeking judicial review of the Board's grant of an application by Suburban Endoscopy Center, to open a same-day gastroenterological surgical center geographically close to the hospitals. *Dimensions Medical Center, Ltd. v. Suburban Endoscopy Center*, 298 Ill. App. 3d 93, 94-97, 697 N.E.2d 1231, 1232-34 (1998). The trial court found that all of the hospitals had standing to seek judicial review, and it reversed the Board's approval. *Id.* at 97, 697 N.E.2d at 1234. On appeal, the Board contended that the trial court committed error in finding that the hospitals had standing because the hospitals failed to prove that any of the complaining hospitals performed gastroenterological procedures. *Id.* The appellate court concluded that the nine regulatory definitions of "adversely affected" persons were inapplicable because the regulation applies only to further administrative review–not to judicial review. *Id.* at 98, 697 N.E.2d at 1234-35. The court also stated that "participation in the public hearing, alone, [does not] serve to establish such standing." *Id.*, 697 N.E.2d at 1235. However, the court confirmed that section 11 of the Illinois Health Facilities Planning Act provides the basis for judicial relief in certain circumstances. *Id.* Only "adversely affected" persons can seek judicial review. *Id.* (citing 20 ILCS 3960/11 (West 1996)). The Act does not define the term "adversely affected." Case law, however, defines the term as those persons or entities who operate a competing health care facility. *Id.* (citing *Condell Hospital*, 161 Ill. App. 3d at 933, 515 N.E.2d at 767-68); see also *Dimensions Medical Center, Ltd. v. Advanced Ambulatory Surgical Center, Inc.*, 305 Ill. App. 3d 530, 712 N.E.2d 880 (1999); *Manor Healthcare Corp.*, 129 Ill. App. 3d at 294, 472 N.E.2d at 494.

¶ 21    Having reviewed the record and arguments on appeal, we find that Dr. Ahmad and Marion Eye Centers make no arguments that they are competing health care facilities. On the contrary, Dr. Ahmad still retains a 30% ownership interest in the surgical center. Instead, Dr. Ahmad argues that he is adversely affected because of the following:

> 1. Ronald E. Osman lacks a medical license;
>
> 2. The sellers breached the agreement to sell the surgical center to the plaintiffs;
>
> 3. The plaintiffs reside within the geographic area of the surgical center;
>
> 4. The plaintiffs are persons who regularly use the health care facility; and
>
> 5. The plaintiffs participated in the proceeding before the state agency.

Some of these arguments relate to "adversely affected" persons in the context of the administrative process, or are based upon a repealed federal regulation, neither of which is at issue in this case. The plaintiffs' arguments that Osman lacks a medical license, that the contract to sell the surgical center to the plaintiffs was breached, and that the plaintiffs participated in the administrative hearing do not form the basis of an "adversely affected" person. Because the plaintiffs make no argument that they operate a competing health care facility giving rise to judicial review under section 11 of the Illinois Health Facilities Planning Act (20 ILCS 3960/11 (West 2010)) and applicable case law, they do not have standing to proceed in the courts. We hold that dismissal is correct as a matter of law and affirm the trial court's judgment.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Williamson County dismissing the plaintiffs' complaint for lack of standing is hereby affirmed.

Affirmed.