MARION HOSPITAL CORPORATION, Plaintiff-Appellant, v. ILLINOIS HEALTH FACILITIES PLANNING BOARD *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—00—1969

Opinion filed July 13, 2001.

452

Shea, Rogal & Associates, of LaGrange (Gerald W. Shea and Ira Rogal, of counsel), and Robert N. Hutchison & Associates, of Chicago (Robert N. Hutchison, of counsel), for appellant.

McDermott, Will & Emery (Brian S. Hucker and Geoffrey A. Vance, of counsel), and James E. Ryan, Attorney General (Joel D. Bertocchi, Solicitor General, and Timothy K. McPike, Assistant Attorney General, of counsel), both of Chicago, for appellees.

JUSTICE REID delivered the opinion of the court:

The appellant, Marion Hospital Corporation (Marion), appeals the circuit court's decision to affirm the Illinois Health Facilities Planning Board's (Board) approval of the application of appellee Southern Illinois Hospital Services, d/b/a Memorial Hospital of Carbondale (Carbondale), for a permit to add open heart surgery service at its hospital. Marion contends that the actions of the Board in approving Carbondale's application were arbitrary and capricious, where Carbondale's application failed to meet certain review criteria. For the following reasons, we affirm.

## BACKGROUND

On February 10, 1999, Carbondale completed an application for a permit to add adult open heart surgery service at its hospital. The Illinois Department of Public Health issued a report evaluating Carbondale's application. The report found that Carbondale did not meet the review criterion of section 1110.1230(b) of the Administrative Code, which provides:

> "The applicant must document that a minimum of 200 open heart surgical procedures will be performed during the second year of operation or that 750 cardiac catheterizations were performed in the latest 12 month period for which data is available. Anticipated open heart surgical volume must be documented by historical referral volume of at least 200 patients directly referred following catheterization at the applicant facility to other institutions for open heart surgery for each of the last two years." 77 Ill. Adm. Code § 1110.1230(b) (1998).

On May 21, 1999, the Board met to consider Carbondale's application. It is undisputed between the parties that Carbondale's application failed to meet section 1110.1230(b). At the meeting, the Board ap-

proved Carbondale's application. On June 15, 1999, the Board issued a permit letter to Carbondale setting forth the terms of the permit.

On July 16, 1999, Marion filed its complaint for administrative review of the Board's decision to grant Carbondale's permit. The Board moved to dismiss the complaint. On May 18, 2000, the circuit court affirmed the Board's decision. On June 6, 2000, Marion filed its notice of appeal.

## ANALYSIS

### I

The appellee initially contend that the trial court lacked jurisdiction because Marion failed to file its complaint within 35 days of the Board's decision pursuant to section 3—103 of the Code of Civil Procedure (735 ILCS 5/3—103 (West 1998)). We disagree.

•1 Section 3—103 provides:

"Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3—103 (West 1998).

In *Marion Hospital Corp. v. Health Facilities Planning Board*, 321 Ill. App. 3d 115 (2001), *appeal allowed*, 195 Ill. 2d 580 (2001), the Board voted to grant a permit application on May 21, 1999. The Board sent via certified mail a letter dated June 1, 1999, informing the proper party that it had been granted a permit and outlining the conditions of the permit. The plaintiff, Marion, filed its complaint for administrative review on July 6, 1999, 46 days after the Board voted to grant a permit and 35 days after the Board sent written notification.

•2 The court in *Marion* held that the 35-day period for the filing of a complaint for administrative review by any interested party, including Marion, began to run on June 1, 1999, when the Board sent a permit letter via certified mail. As Marion filed its complaint within 35 days of that date, its complaint was timely.

In the instant case, the Board sent written notification of its decision on June 15, 1999. Marion filed its complaint on July 6, 1999, well within the 35-day period after the Board sent written notification and, consequently, well within the time for filing a complaint. As such, the trial court's jurisdiction was proper.

### II

Marion contends that the Board's actions were arbitrary and capricious because it did not follow its own regulations when it approved an open heart surgery service for Carbondale, as Carbondale had not

performed 750 cardiac catheterizations or transferred 200 patients annually for open heart surgery as required by section 1110.1230(b). Marion contends that compliance with section 1110.1230(b) is mandatory, and because Carbondale's application did not meet the requirements of section 1110.1230(b), the Board's actions in approving Carbondale's permit were arbitrary and capricious. We disagree.

●3 Any individual wishing to construct a health care facility in Illinois must first obtain a permit from the Board pursuant to the Illinois Health Facilities Planning Act (Planning Act) (20 ILCS 3960/5 (West 1998)). The Planning Act provides that the Board shall approve and authorize the issuance of a permit if it finds that the applicant is fit, willing, and able to provide a proper standard of health care for the community and that the project is economically feasible, consistent with the public interest, consistent with the orderly and economic development of such facilities, and in accord with the criteria adopted pursuant to section 12 of the Planning Act. 20 ILCS 3960/6 (West 1998). Pursuant to section 12, the Board has promulgated regulations containing criteria for it to consider when reviewing permit applications. The regulations relevant to the instant case are contained in part 1110 of Title 77 of the Illinois Administrative Code. 77 Ill. Adm. Code pt. 1110 (1998).

●4 Pursuant to section 3—110 of the Code of Civil Procedure, the findings and conclusions of an administrative agency on questions of fact shall be held to be *prima facie* true and correct on appeal. 735 ILCS 5/3—110 (West 1998). An administrative decision should not be overturned unless the agency exercised its authority in an arbitrary and capricious manner or the decision is contrary to the manifest weight of the evidence. *Murdy v. Edgar*, 103 Ill. 2d 384, 391 (1984). A board's actions will be deemed to be arbitrary and capricious where it fails to follow its own regulations. *Springwood Associates v. Health Facilities Planning Board*, 269 Ill. App. 3d 944, 950 (1995); *Heavner v. Illinois Racing Board*, 103 Ill. App. 3d 1020, 1025 (1982).

●5 The question we must answer on review is whether the Board failed to follow its own regulations or, stated differently, whether compliance with section 1110.1230(b) is mandatory. Marion points to the language of section 1110.1230(b) which states that the "applicant *must*" (emphasis added) for support of its contention that the Board cannot issue a permit absent compliance with section 1110.1230(b). 77 Ill. Adm. Code § 1110.1230(b) (1998). The Board, however, asserts that section 1130.660 allows the Board to issue a permit although a project has not met all of the review criteria. Section 1130.660(b) provides that "[t]he failure of a project to meet one or more review criteria, as set forth in 77 Ill. Adm. Code 1110 and 1120 shall not prohibit the issuance of a permit." 77 Ill. Adm. Code § 1130.660 (1998).

•6 The Administrative Code has the force and effect of law, and the rules of statutory construction apply when construing its provisions. *Medcat Leasing Co. v. Whitley*, 253 Ill. App. 3d 801, 803 (1993). The primary rule of statutory interpretation is to ascertain and give effect to the legislature's intent, the best indicator of which is the language of the statute. *Kunkel v. Walton*, 179 Ill. 2d 519, 533 (1997). In construing a statute, courts should not look beyond the statutory language unless that language is ambiguous. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). Statutes should be evaluated as a whole and, where possible, should be construed in such a manner that no provision is rendered superfluous or meaningless. *Kraft*, 138 Ill. 2d at 189. Furthermore, administrative rules and regulations should be construed together with the statute pursuant to which they were adopted in order to insure a sound and effective legislative program. *Olin Corp. v. Pollution Control Board*, 54 Ill. App. 3d 480, 485 (1977). An agency's interpretation of its own rule or regulation is generally entitled to great weight. *Village of Fox River Grove v. Pollution Control Board*, 299 Ill. App. 3d 869, 877 (1998). This court, however, reviews questions of statutory interpretation *de novo* (*In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000)), and we will not accord deference to an interpretation that is plainly erroneous or contrary to the clear language of the provision. *Dean Foods Co. v. Illinois Pollution Control Board*, 143 Ill. App. 3d 322, 334 (1986).

Looking at section 1110.1230(b), we find that there is no ambiguity in its language. The language of the regulation clearly states that the "applicant must document that a minimum of 200 open heart surgical procedures will be performed." 77 Ill. Adm. Code § 1110.1230(b) (1998). However, we must read section 1110.1230(b) in conjunction with section 1130.660. Section 1130.660 unambiguously states that the failure to satisfy one or more of the criteria contained in part 1110 of Title 77 shall not prevent the issuance of a permit.

We find guidance from our decision in *Dimensions Medical Center, Ltd. v. Suburban Endoscopy Center*, 298 Ill. App. 3d 93 (1998), where three hospitals objected to another hospital's administrative application to open an ambulatory surgical treatment center dedicated to gastroenterological procedures. The hospitals argued that the Board erred when it approved the application when certain review criteria had not been met. Specifically, the hospitals argued that the necessary criteria in sections 1110.230(f) and 1110.1540(e) had not been met. Each of those review criteria requires that the "applicant *must*" perform an action.

This court held that the Board's decision to approve the application was not against the manifest weight of the evidence where the ap-

plicant failed to meet one or more of the review criteria. This court held that section 1130.660 gave the Board the authority to approve an application where one or more review criteria were not met. In doing so, the *Dimensions* court relied upon *Access Center for Health, Ltd. v. Health Facilities Planning Board*, 283 Ill. App. 3d 227 (1996). In *Access* this court held that an applicant's failure to comply with review criteria set out in section 1110.230 could be excused by the Board pursuant to section 1130.660. *Dimensions*, 298 Ill. App. 3d at 102, citing *Access*, 283 Ill. App. 3d at 238-39.

Similarly, in *Cathedral Rock of Granite City, Inc. v. Illinois Health Facilities Planning Board*, 308 Ill. App. 3d 529, 545 (1999), this court held that section 1130.660 allowed the Board to issue a permit although only 15 of the 18 applicable review criteria had been met.

Marion's reliance on *Springwood Associates v. Health Facilities Planning Board*, 269 Ill. App. 3d 944 (1995), is misplaced. In *Springwood* it was argued that the applicant did not meet certain review criteria. The appellant argued that the appellee's application was deficient for a failure to include market studies and a failure to meet the staffing review criteria, both of which were required with the appellee's application. The court held that the Board's action was arbitrary and capricious for failing to follow its own regulations. The decision in *Springwood* is distinguishable from the case at bar, because the court in *Springwood* did not take into consideration section 1130.660 when it rendered its decision.

•7 It is uncontroverted that no facility in the far southern part of our state is able to meet all of the criteria required by section 1110.1230(b). Consequently, if the Board or this court were to hold that compliance with section 1110.1230(b) is absolutely mandatory and the Board had no discretion in approving Carbondale's application because Carbondale failed to satisfy the requirements of section 1110.1230(b), no medical facility in that part of the state could be approved to provide open heart surgery services.

Although Carbondale's application did not meet all of the review criteria, section 1130.660 gives the Board the authority to issue a permit. It is a necessary function of the Board that it has the discretion to make these types of decisions. It cannot be said that the legislature intended for patients to leave the state in order to receive necessary medical treatment. Here, section 1130.660 gives the Board the necessary discretion to bring much needed medical services to a part of the state that would otherwise have to do without those services. It could not have been the intent of the legislature that the result of requiring "necessary review criteria" be that downstate patients travel long distances or in some instances leave the state to

receive medical services. For the forgoing reasons, the decision of the trial court is affirmed.

Affirmed.

QUINN, P.J., and THEIS, J., concur.