2024 IL App (4th) 230282

NO. 4-23-0282

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 6, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BLESSING HOSPITAL, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| THE ILLINOIS HEALTH FACILITIES AND SERVICES | ) | |
| REVIEW BOARD; DEBRA SAVAGE, in Her Capacity as Chair of | ) | |
| the Illinois Health Facilities and Services Review Board; KENNETH | ) | |
| BURNETT, in His Capacity as a Member of the Illinois Health | ) | No. 22MR238 |
| Facilities and Services Review Board; DAVID FOX, in His Capacity | ) | |
| as a Member of the Illinois Health Facilities and Services Review | ) | |
| Board; STACY GRUNDY, in Her Capacity as a Member of the | ) | |
| Illinois Health Facilities and Services Review Board; | ) | Honorable |
| ANTOINETTE HARDY-WALLER, in Her Capacity as a Member | ) | Adam Giganti, |
| of the Illinois Health Facilities and Services Review Board; GARY | ) | Judge Presiding. |
| KAATZ, in His Capacity as a Member of the Illinois Health | ) | |
| Facilities and Services Review Board; MONICA LeGRAND, in Her | ) | |
| Capacity as a Member of the Illinois Health Facilities and Services | ) | |
| Review Board; SANDRA MARTELL, in Her Capacity as a Member | ) | |
| of the Illinois Health Facilities and Services Review Board; LINDA | ) | |
| RAE MURRAY, in Her Capacity as a Member of the Illinois Health | ) | |
| Facilities and Services Review Board; THE DEPARTMENT OF | ) | |
| PUBLIC HEALTH; AMAAL TOKARS, M.D., in Her Capacity as | ) | |
| Interim Director of Public Health; QUINCY PHYSICIANS AND | ) | |
| SURGEONS CLINIC, S.C., d/b/a Quincy Medical Group; QUINCY | ) | |
| PHYSICIANS AND SURGEONS CLINIC, PLLC, d/b/a Quincy | ) | |
| Medical Group; and QUINCY MEDICAL GROUP HOSPITAL, | ) | |
| INC., | ) | |
|     Defendants-Appellees. | ) | |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.

Justices Harris and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff Blessing Hospital appeals from the trial court's order dismissing its administrative review complaint for failure to have summons issued within 35 days of service of the May 4, 2022, administrative decision as required by section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2022)). On appeal, plaintiff argues that the service date was never established and that, therefore, section 3-103's 35-day period never commenced. As a result, plaintiff argues that the summonses issued on June 15, 2022, were timely.

¶ 2        This case presents what can only be described as a paradox. The critical time period in question commences with service of the administrative decision, but the party seeking to appeal is not entitled to be served with that decision. That party must, therefore, measure the commencement of the relevant period based on when the other party was served, a fact about which the appealing party is likely to have little knowledge. Though this statutory scheme may be paradoxical, it is the scheme the legislature has given us. Because the moving parties below never established the date on which service occurred, they failed to establish the date on which the period for plaintiff to appeal (and effectuate service in the circuit court) began to run. Consequently, we reverse and remand.

¶ 3                              I. BACKGROUND

¶ 4        On April 26, 2022, the Illinois Health Facilities and Services Review Board (Board) approved a certificate of need application for project No. 20-044 submitted by Quincy Medical Group Hospital and Quincy Physicians & Surgeons, S.C., doing business as Quincy Medical Group (collectively QMG), to establish a 28-bed hospital in Quincy, Illinois. The Board issued a permit letter on May 4 addressed to Patricia Williams, QMG's registered agent, vice president,

and chief financial officer. Although the May 4 letter stated it was "Transmitted Electronically," it did not contain an e-mail address, a facsimile number, or proof of service.

¶ 5                                       A. Administrative Review Complaint

¶ 6            On May 31, Blessing Hospital filed an administrative review complaint pursuant to the Administrative Review Law (*id.*) in the circuit court of Sangamon County, challenging the Board's issuance of permit. There is no dispute about the timeliness of the filing of the complaint. Summonses, however, were not issued until June 15. The complaint alleged that Blessing Hospital was adversely affected by the May 4 decision and, therefore, had standing to bring the administrative review under section 11 of the Illinois Health Facilities Planning Act (Planning Act) (20 ILCS 3960/11 (West 2022)). Although the administrative complaint asserts that the Board's decision was "issued" on May 4, the complaint does not allege a service date.

¶ 7                                       B. Parties to the Administrative Review

¶ 8            The defendants in the administrative review action can be broken into two distinct groups: (1) the QMG defendants and (2) the State defendants (the Board; Debra Savage (in her capacity as chair of the Board); Board members Kenneth Burnett, David Fox, Stacy Grundy, Antoinette Hardy-Waller, Gary Kaatz, Monical Legrand, Sandra Martell, and Linda Rae Murray; the Department of Public Health (IDPH); and Amaal Tokars (interim Director of Public Health) (collectively referred to as the State)).

¶ 9                                       C. Section 2-619(a) Motions to Dismiss

¶ 10           The State and QMG defendants moved to dismiss the administrative complaint pursuant to section 2-619(a) of the Code of Civil Procedure, subsections (5) and (9) (735 ILCS 5/2-619(a)(5), (9) (West 2022)), arguing that the summonses were not issued within the required 35-day period of section 3-103 of the Administrative Review Law (*id.* § 3-103). According to

defendants, the 35-day period commenced with the "issuance" of the May 4 letter to Quincy Medical Hospital and expired on June 8. Neither motion indicated how or when the May 4 decision was served on them.

¶ 11     On November 16, 2022, the trial court granted defendants' motion to dismiss, with prejudice, due to plaintiff's failure to cause summons to timely issue. The court made no finding as to defendants' argument that various entities and individuals should be dismissed as unnecessary parties to the litigation. In granting the motions to dismiss, the court found that section 3-103's 35-day statutory period commenced on May 4, the day the administrative decision was issued. Moreover, it found that, although an administrative review complaint was filed on May 31, summonses did not issue until June 15, *i.e.*, 42 days after the May 4 date. Given these findings, the court concluded that the summonses were not issued within the required 35 days and that dismissal of the administrative review action was, therefore, mandatory. Additionally, the trial court concluded that the good-faith exception for late issuance of summonses did not apply.

¶ 12     Plaintiff moved to reconsider the dismissal order, arguing that (1) no evidence existed in the record showing that the Board served QMG in compliance with Illinois law, (2) the trial court improperly interpreted the 35-day period provided for under section 3-103, (3) the court improperly weighed competing affidavits, without an evidentiary hearing, in granting defendants' motion to dismiss, and (4) the court improperly elevated the good-faith exception "to an incongruous 'due diligence' standard."

¶ 13     On May 2, 2023, the trial court denied plaintiff's motion to reconsider; it reached several conclusions on the issue of service, namely, that (1) plaintiff did not argue improper service in its response to defendants' motion to dismiss and, therefore, could have raised the argument earlier, (2) there was no evidence the permit letter was improperly served, (3) plaintiff lacked

standing to challenge service on the QMG defendants, (4) plaintiff's cited cases were factually distinguishable, and (5) plaintiff was bound by its numerous admissions on the record that the 35-day period started to run on May 4, 2022, and that it had not complied with the 35-day requirement for issuance of summons.

¶ 14 This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 Plaintiff's appeal presents two questions: (1) when does the 35-day period under section 3-103 commence and (2) alternatively, if the filing period commenced on May 4, 2022, whether summonses issued on June 15 precluded the trial court from considering the merits of plaintiff's complaint for administrative review.

¶ 17 A. Standard of Review

¶ 18 It is well settled that our review of a section 2-619 dismissal is *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Rodriguez v. Sheriff's Merit Comm'n of Kane County*, 218 Ill. 2d 342, 349 (2006) (dismissal of administrative review complaint for failure to timely file within section 3-103's 35-day period). Section 2-619(a) of the Code of Civil Procedure permits dismissal where, *inter alia*, "the action was not commenced within the time limited by law" (735 ILCS 5/2-619(a)(5) (West 2022)) and where "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim" (*id.* § 2-619(a)(9)). When ruling on a motion to dismiss, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Rodriguez*, 218 Ill. 2d at 349. A court should grant the motion where a plaintiff can prove no set of facts that would support a cause of action. *Id.*

¶ 19 B. Has Plaintiff Forfeited the Service Issue?

- 5 -

¶ 20    Before addressing the merits of the appeal, we first address defendants' assertion that plaintiff forfeited its argument concerning service by failing to raise it in the proceedings below. According to defendants, plaintiff did not raise the service issue in its original response to defendants' motion to dismiss. Moreover, defendants point to the trial court's order denying plaintiff's motion to reconsider, which concluded that the issue had not been raised in response to the original motion at the hearing.

¶ 21    In reviewing the transcript from the initial motion to dismiss hearing, however, we disagree with the trial court and defendants' position for two reasons. First, the question of proper and timely service was raised by plaintiff in counsel's discussions with the trial court. During the hearing on the initial motion, plaintiff informed the court that it needed "to make one argument so as to preserve this for the record." Plaintiff then stated, "I want to argue, Your Honor, the principle, and the principle is [an earlier referenced case] says that the time frame runs from when the issue— the notice was issued. Okay, but that's actually not what the law says in two very material ways."

¶ 22    Plaintiff then cited section 3-103 and added, "So, there are two important issues there. One is[,] it's not the date it was mailed. It's actually the date it was served, and that creates an additional gap of time." After discussing plaintiff's standing to challenge the Board's decision, counsel went on to say that any time frame in the case began to run from when the decision was served on the affected party, here, Quincy Medical Hospital. Plaintiff then discussed how service can be established, *i.e.*, certified mail.

>    "I don't know if [the Board] is using certified mail. I do know [the decision] references email. But, if Your Honor, it's email, there's two separate questions. One question is[,] is email just a courtesy or does that now constitute proper service of a final decision. I don't know the answer to that.

The second question, Your Honor, is, how can the standard to which an opposing party, but still an affected party, who has never provided service of this, can the clock run from a private email between a government entity and another party. *As I stand here today, Your Honor, I have no idea when the decision was served. I have no idea how it was served other than there's a reference to email. There's a date on the letter that seems to be what they would be relying on, but we have all written the letter and emailed it one, two, three, five days later, and if we are going to say that our summons were issued late, we cannot look over the fact that technically, Your Honor, as an affected party we are still yet to be served."* (Emphasis added.)

¶ 23       This colloquy demonstrates that the issue of when and how service occurred was raised before the trial court at the time of the initial motion to dismiss hearing.

¶ 24       Second, and as further grounds for our conclusion that the issue was preserved, we note that the issue of when section 3-103's 35-day period commenced was necessarily raised as part of defendants' motions to dismiss. Logically, in order to establish that plaintiff's summonses were issued beyond the statutory 35-day period, it was incumbent upon defendants to show *when* that 35-day period commenced. See 735 ILCS 5/2-619(a) (West 2022). Although both defendants argued that the Board's decision was "issued" on May 4, 2022, the date of the decision's issuance is not determinative; the question is the date of service.

¶ 25       For these reasons, we conclude that the issue of when service was completed is properly before us, so we will consider the issue of when service of the May 4 decision occurred.

¶ 26       C. Commencement of a Section 3-103 Administrative Review Proceeding

¶ 27    The commencement of an administrative review proceeding is governed by section 3-103 of the Administrative Review Law. *Id.* § 3-103. According to that section:

"Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision ***." *Id.*

¶ 28    Section 3-103 further provides:

"The method of service of the decision shall be as provided in the Act governing the procedure before the administrative agency, but if no method is provided, a decision shall be deemed to have been served either when a copy of the decision is personally delivered or when a copy of the decision is deposited in the United States mail, in a sealed envelope or package, with postage prepaid, addressed to the party affected by the decision at his or her last known residence or place of business." *Id.*

¶ 29    This same service methodology is reiterated in section 3-105. *Id.* § 3-105.

¶ 30    Accordingly, under section 3-103 of the Administrative Review Law, every action to review a final administrative decision shall be commenced by the filing of an administrative complaint and issuance of summons within 35 days of the date a copy of the final administrative decision was served on the party affected by the decision. *Gunther v. Illinois Civil Service Comm'n*, 344 Ill. App. 3d 912, 913 (2003). The 35-day period for issuance of summons by the clerk of the court is mandatory, though not jurisdictional. *Burns v. Department of Employment Security*, 342 Ill. App. 3d 780, 786-87 (2003). Nevertheless, the procedures for review must be strictly followed because the Administrative Review Law is a departure from common law. *Lockett*

*v. Chicago Police Board*, 133 Ill. 2d 349, 353 (1990); *Palos Bank & Trust Co. v. Illinois Property Tax Appeal Board*, 2015 IL App (1st) 143324, ¶ 12. According to section 3-102 of the Administrative Review Law, "[u]nless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." 735 ILCS 5/3-102 (West 2022); *Rodriguez*, 218 Ill. 2d at 356.

¶ 31    D. When Did Blessing Hospital's 35-Day Clock Commence?

¶ 32    1. *Service on the Actual Party Starts the Period*

¶ 33    It is at this point in our analysis that we confront the paradox created by statute. Though plaintiff was not an actual party to the administrative proceedings before the Board, section 11 of the Planning Act gives it standing to seek judicial review of a final decision that adversely affects it. 20 ILCS 3960/11 (West 2022) (describing the rights of persons "adversely affected by a final decision of the State Board"). As noted above, the Administrative Review Law provides that plaintiff has 35 days in which to file its appeal and to have circuit court summonses issue for the defendants; the 35-day period commences not on issuance of the decision but upon its service.

¶ 34    But here is the rub: only actual parties are entitled to notice and service of the Board's final decision; plaintiff is not such a party. See 77 Ill. Adm. Code 1130.1170(b) (2013). So, if plaintiff has standing to bring an action for judicial review within 35 days of service, but is not entitled to be served, when does its 35-day period start to run?

¶ 35    On this point we find helpful the decision in *Marion Hospital Corp. v. Illinois Health Facilities Planning Board*, 324 Ill. App. 3d 451 (2001). The adversely affected nonparty in that case, Marion Hospital Corporation (Marion), appealed the trial court's decision to affirm

the Illinois Health Facilities Planning Board's approval of another hospital's permit application. *Id.* at 453. Finding that the Board sent written notification of its decision by certified mail to the other hospital on June 15, 1999, and that Marion filed its action within 35 days thereafter, the court determined Marion's complaint was timely. *Id.* at 454. In other words, the same event commencing the 35-day period for the interested party—triggered by service on that party—was also applied to the adversely affected nonparty. Indeed, *Marion Hospital* gives plain meaning to section 3-103 of the Administrative Review Law, which governs "[e]very action to review a final administrative decision." 735 ILCS 5/3-103 (West 2022). Thus, in the instant case, we must look to the date of service on the actual party, QMG, to determine when the period for filing and issuance of summons began to run for plaintiff as an adversely affected person.

¶ 36        This is the scheme the legislature has chosen, though it certainly could have chosen otherwise. It might, for instance, have commenced an adversely affected nonparty's time for filing upon publication of the decision, given that the nonparty would not itself be served. But we are obligated to apply the statute as passed by the legislature as it is, not as it might have been; we conclude that the interpretation accepted in *Marion Hospital* and relied on here faithfully does so. We cannot, "under the guise of statutory interpretation, *** 'correct' an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language." *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). Perhaps this case will give the legislature reason to reexamine the statutory scheme for appeals by adversely affected nonparties.

¶ 37                2. *What Method of Service Was Required Here?*

¶ 38        Section 3-103 further provides that the method of service shall be as provided for in the laws governing procedure before the administrative agency in question but that, if no method is so provided, "a decision shall be deemed to have been served either when a copy of the decision

is personally delivered or when a copy of the decision is deposited in the United States mail." 735 ILCS 5/3-103 (West 2022). Here, the law governing the agency in question does, in fact, provide a rule regarding the method of service. According to section 1130.1170(b) of Title 77 of the Illinois Administrative Code, the Health Facilities and Services Review Operational Rules, "[a] copy of [the Board's] decision shall be sent by Certified Mail or personally served upon all the parties." 77 Ill. Adm. Code 1130.1170(b) (2013). Similarly, section 1130.1100(a) governing "service" provides that notices "shall be served either personally or by certified mail upon all parties or their agents appointed to receive service of process." 77 Ill. Adm. Code 1130.1100(a) (2006). Finally, section 1130.1100(c) states that proof of service "shall be by certificate of attorney, affidavit or acknowledgement." *Id.* § 1130.1100(c).

¶ 39 Because no other service provisions have been identified, the method of service set forth in section 1130.1170(b) controls; thus, service is to occur by personal service or by certified mail, and when service is via certified mail, the date of service is the date of mailing. See *Nudell v. Forest Preserve District of Cook County*, 207 Ill. 2d 409, 414 (2003) (stating the 35-day period for filing a complaint for administrative review begins on the date the agency decision is mailed); *Lutheran General Health Care System v. Department of Revenue*, 231 Ill. App. 3d 652, 659 (1992) ("A decision is considered served when it is deposited in the United States mail."). Moreover, section 1130.1100(c) requires proof of service. Here, neither the date of service nor a proof of service has been provided to the court.

¶ 40 In this case there has been no suggestion that service was personally accomplished; the parties and the trial court have, instead, focused on when service "issued." However, "issuance" of service is not the question. The issue involves whether service was accomplished according to the means set forth in section 1130.1170(b)—by personal service or certified mail.

¶ 41                    3. *Who Carried the Burden to Establish the Service Date?*

¶ 42          Having concluded that plaintiff, as an adversely affected person, was required to use QMG's service date to determine when its 35-day period commenced and that plaintiff's service date was the date of certified mail or personal service, we must now determine who carried the burden of establishing the actual service in the instant case. The trial court placed this burden on plaintiff and concluded that plaintiff had failed to meet it.

¶ 43          However, it was defendants who moved to dismiss the administrative review complaint based on plaintiff's purported failure to have summons issued within a 35-day period of service of the Board's decision. Specifically, defendants' section 2-619 motions were brought under subsection (a)(5), arguing that the action was not commenced within the time limited by law, and under subsection (a)(9), arguing that the claim was barred by other affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2-619(a)(5), (9) (West 2022). According to section 2-619(a), "[i]f the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit." *Id.* § 2-619(a). Here, the administrative review complaint stated only that the Board's decision was *issued* on May 4, 2022; it did not state when the Board's decision was *served*. Thus, under subsection 2-619(a), it was incumbent upon defendants to establish the grounds supporting their respective motions, *i.e.*, the date of service on QMG. See *id.*

¶ 44          Our conclusion here is amply supported by case law. In *Russell v. Board of Education of Chicago*, 379 Ill. App. 3d 38 (2007), a former public-school teacher sought review of an administrative hearing officer's ruling upholding the decision of a board of education to terminate a teacher's employment without prior written warning. On appeal, the board of education

argued that Russell was not entitled to judicial review because her complaint was untimely filed. In considering the issue, the court observed:

> "In the instant case, the Board's failure to show any form of service on the plaintiff prevents us from determining when the plaintiff was served with the Board's decision. The Board controlled the method and manner of service. The cover letter to its final decision is dated March 25, 2005, yet the record does not contain a mailing affidavit, an affidavit of service, or a certified mail return receipt." *Id.* at 44.

¶ 45 Relying on the supreme court's decision in *Rodriguez*, 218 Ill. 2d at 346, the *Russell* court stated, "an administrative agency must bear the burden of establishing that a petition for judicial review under the Administrative Review Law was filed more than 35 days from the date it served its final decision." *Russell*, 379 Ill. App. 3d at 44. The *Russell* court continued,

> "[i]n the instant case, Russell could not have drafted an affidavit of mailing on personal knowledge of the Board's mailing practices to establish that her petition was timely filed. The administrative agency is the only party that can swear in an affidavit that it placed the final decision in the United States mails on a certain date. Thus, we must rely on the Board to provide us with proof of the date of service." *Id.*

¶ 46 We find *Russell* persuasive and apply it to the facts of this case. Moreover, we find its comment concerning the burden of establishing service particularly appropriate. In *Russell*, the court explained:

> "The Board had three opportunities to prove that Russell's petition was untimely. It availed itself of none. The Board drafted a blank certificate of mailing

at the bottom of its decision, which could have sufficed as proof that the statutory period had run, but the certificate was never filled out or signed. The Board's decision also states that it was sent via certified mail and delivered via personal service, yet a return receipt was never made part of the record in either the trial court or this court. Finally, the Board has not provided this court with an affidavit of service. The Board cannot claim that Russell filed an untimely petition for judicial review when it has failed to demonstrate in any manner that the petition was untimely by proving when it mailed or personally served the decision." *Id.* at 45.

¶ 47 The same is true here, where the Board was in the unique position of knowing if, how, and when service on QMG was accomplished. The *Russell* court observed that the plaintiff in that case "could not have drafted an affidavit of mailing on personal knowledge of the Board's mailing practices to establish that her petition was timely filed." *Id.* at 44. Had the Board undertaken any of the three options outlined in *Russell*, it could have established that service was indeed accomplished and when. We note that the case for placing the burden on the Board is even stronger here because, as a nonparty, plaintiff was not entitled to receive notice and under *Marion* it was required to look to defendants' service date. As in *Russell*, the administrative agency—here the Board—"is the only party that can swear in an affidavit that it placed the final decision in the United States mails on a certain date." *Id.*

¶ 48 4. *Is the May 4 Letter Presumed Served on That Date?*

¶ 49 Defendants contend that the May 4 letter should be deemed the mailing date based on *Summers v. Illinois Commerce Comm'n*, 58 Ill. App. 3d 933 (1978). There, a majority of this court affirmed the dismissal of plaintiff's administrative review complaint on the grounds it was

- 14 -

filed beyond the 30-day filing period for challenging a decision of the Illinois Commerce Commission. See Ill. Rev. Stat. 1975, ch. 111²/₃, ¶ 72. In reliance of the language of the governing statute, which did not require proof of service of the date of mailing, the majority found that the date of the letter notice, without more, should be presumed to be the date of mailing. According to the majority in *Summers*, "[p]roof of the date of the letter, then, establishes a *prima facie* case of the date of mailing, thereby shifting the burden to the plaintiffs to prove that the letter was mailed later than the date indicated on the letter." (Emphasis omitted.) *Summers*, 58 Ill. App. 3d at 937.

¶ 50        We find *Summers* both unpersuasive and not on point with the issues presented here. First, we believe the observation from the dissenting opinion in *Summers* is valid: "Neither human experience nor familiarity with governmental habits persuades me that all official documents are mailed on the date that they are typed." *Id.* at 938 (Craven, J., dissenting). Second, the case relied on by the *Summers* majority, *Orrway Motor Service, Inc. v. Illinois Commerce Comm'n*, 40 Ill. App. 3d 869, 871-72 (1976), based its conclusion about a presumption of mailing on a docket entry in the agency's record stating that a certified letter was sent; here, there is no such indication in the record. Finally, the parties in *Summers* disagreed about the date a mailing was sent, but they did not dispute that a mailing *was* sent. Here, there is no evidence in the record showing that the notice was mailed to anyone, much less mailed by certified mail. In fact, the indication on the decision letter is that it was transmitted by *electronic* means, which, as discussed below, is not shown here to be an acceptable method of service under the applicable rules.

¶ 51        We conclude that defendants failed to meet their burden of proof to establish when service occurred and, without that date, failed to establish that the summonses issued were not timely. In so ruling, we are not holding, as plaintiff urges, that the 35-day time period remains

open indefinitely. Rather, we merely conclude that, on the facts of this case, defendants failed to carry their burden to establish that the summonses were not timely issued in the circuit court.

¶ 52                                    5. *Defendants' Other Arguments*

¶ 53        Defendants have raised a number of other arguments, which we now address. First, defendants contend that the service date of the Board's decision was May 4, basing their argument on the "electronically transmitted" language found on the May 4 permit letter. For a number of reasons, we reject this argument. Defendants have failed to show that electronic service was authorized. Although electronic service is authorized under section 10-75 of the Illinois Administrative Procedure Act, entitled "Service by email," which says that, "[t]o the extent a person or entity *** submits an application for licensure or permitting to the agency, that agency may require, as a condition of such application *** [or] permitting ***, that such persons or entities consent to service by email of the documents described in Section[ ] ***10-50 [(service of final decisions)] for any hearings that may arise in connection with such application" (5 ILCS 100/10-75(a)(2) (West 2022)), there is no such showing on this record that electronic service was required or permitted.

¶ 54        Next, defendants argue that plaintiff lacked standing to challenge service of the May 4 permit letter on the QMG defendants, pointing to the decisions in *People v. Kuhn*, 2014 IL App (3d) 130092, and *In re M.W.*, 232 Ill. 2d 408 (2009). We disagree. First, it is difficult to argue that plaintiff lacked standing when *Marion Hospital* establishes that an adversely affected person's time for filing and obtaining summons is the same as that of the actual party. If an adversely affected person must rely on the service date of an actual party, then the adversely affected person must also be able to litigate the effective date of service on that party. While it is reasonable to hold that one party cannot challenge the sufficiency of another's service for purposes of personal

jurisdiction (*People v. Ocon*, 2014 IL App (1st) 120912, ¶ 34), the issue here is subject-matter jurisdiction and a related mandatory requirement for issuance of summons; the underlying question is, when did the 35-day period begin to run for all prospective appellants? Surely plaintiff must have standing to litigate what defendants posit is an issue dispositive of its complaint.

¶ 55          Second, defendants' cited cases are inapposite. *Kuhn* involved a defendant "objecting to his failure to properly serve the State with notice of his section 2-1401 petition." *Kuhn*, 2014 IL App (3d) 130092, ¶ 13. Although defendant's service did not comply with Illinois Supreme Court Rule 105 (eff. Jan. 1, 1989), the State "had actual notice of the petition, which was sent by regular mail, and was present at two hearings that occurred after the petition was filed." *Kuhn*, 2014 IL App (3d) 130092, ¶ 13. The case of *In re M.W.* involved an objection to the court's personal jurisdiction over a necessary party who, although improperly served, nevertheless appeared. There, when the necessary parties "appeared at the detention hearing and were given copies of the petition, personal jurisdiction over them was established." *In re M.W.*, 232 Ill. 2d at 428. Neither *Kuhn* nor *In re M.W.* are factually applicable to this case, where one party's service deadline date is computed by reference to the date the underlying decision was served on another party.

¶ 56          Next, defendants contend that plaintiff had actual knowledge of the Board's May 4 permit letter. Here, we point to our supreme court's ruling in *Nudell*, in which the court held that, "where the administrative agency serves its decision via United States mail, the 35-day period for filing a complaint for administrative review begins on the date that the agency decision is mailed, as opposed to the date the affected party actually receives the decision." *Rodriguez*, 218 Ill. 2d at 351 (citing *Nudell*, 207 Ill. 2d at 424). Thus, the official date of service—*i.e.*, the date of mailing—controls. Given *Nudell*, defendants' argument must fail.

¶ 57 We find further support for this conclusion in our own decision in *Gemini Services, Inc. v. Martin*, 141 Ill. App. 3d 17 (1986). There, we concluded that an administrative review complaint was timely filed where the plaintiff, despite having actual knowledge of the decision two days after it was released, filed its administrative review complaint within 35 days from the date of presumed service, which by rule was four days after the order was mailed by registered or certified mail. *Id.* at 17-18. Under the facts of *Gemini Services*, the order was filed November 13, plaintiff received a copy of the order on November 15, and the complaint was filed on December 24, a Monday. *Id.* at 18. Presumed service was November 17. *Id.* at 19.

¶ 58 In dismissing the complaint for want of jurisdiction for untimely filing, the trial court had found that the last day for filing for review in the circuit court was December 20, the thirty-fifth day after counsel for Gemini *actually received* notice of the order of the commission. *Id.* at 18. On appeal, this court reversed, holding that the December 22 filing fell within the 35-day time limit because the period did not begin to run until four days after the order was mailed to Gemini's counsel. *Id.* Although the Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, ¶ 1-101 *et seq.*) was silent as to the method for service of final orders, we utilized section 5300.30 of Title 56 of the Illinois Administrative Code on service of pleadings, which permitted service by first-class mail and provided that " '[s]ervice by mail shall be deemed complete four days after mailing of the document.' " *Gemini Services*, 141 Ill. App. 3d at 19 (quoting 56 Ill. Adm. Code 5300.30, amended at 5 Ill. Reg. 2709 (eff. Mar. 2, 1981)).

¶ 59 Here, when section 1130.1100 on service is read in conjunction with *Nudell*, it is clear that service occurs when a decision is placed in the mail, specifically, by certified mail. *Nudell*, 207 Ill. 2d at 424.

¶ 60 We further note that, under section 1130.1100(c), proof of service "shall be by certificate of attorney, affidavit or acknowledgment." 77 Ill. Adm. Code 1130.1100(c) (2006). Applying *Gemini Services*, the requirement of compliance with governing service rules is not overcome by actual service of the decision prior to establishment of the mailed service date (or at least where, as here, there is no acknowledgement of service).

¶ 61 Finally, defendants and the trial court contend that plaintiff made numerous admissions below that the 35-day period commenced on May 4, when the administrative decision was issued. However, statements of legal conclusion do not normally constitute admissions. See *Fortae v. Holland*, 334 Ill. App. 3d 705, 714 (2002); *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2019 IL 123046, ¶ 38 ("Even if the allegations in defendant's affirmative defenses could be construed as an admission that the LPA was a valid contract, this would not constitute a judicial admission because it is a legal conclusion."). An allegation about when a statutory period began to run is the assertion of a legal conclusion.

¶ 62 *6. Defendants' Challenge to Irregularities and Proper Parties*

¶ 63 In the trial court, both groups of defendants challenged whether some of the parties named in the administrative review complaint were proper parties; moreover, the State defendants further challenged the adequacy of summons, as issued. These issues, however, are not before this court on appeal, because the trial court, in granting the initial motion to dismiss, expressly did not rule upon them. *Thompson v. Platt*, 106 Ill. App. 3d 757, 758 (1982) ("[W]e remand the cause to the circuit court to consider the other arguments submitted in the plaintiff's motion for reconsideration for, although they were presented, the court apparently made no ruling on them."). Although the trial court's November 2022 order offered some insight into how it might view each issue, the order was clear in stating that the State defendants' motion was granted in part and denied

in part and that, on the issues concerning proper parties, the court "ma[d]e "no finding." Therefore, on remand, we instruct the trial court to address these two remaining issues on their merits before proceeding forward with the administrative review.

¶ 64                                    III. CONCLUSION

¶ 65            For the reasons stated, we reverse the trial court's judgment and remand this case for further proceedings, including consideration of the unaddressed issues raised in the State defendants' motion to dismiss.

¶ 66            Reversed and remanded.

*Blessing Hospital v. Illinois Health Facilities & Services Review Board*,
**2024 IL App (4th) 230282**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 22-MR-238; the Hon. Adam Giganti, Judge, presiding. |
| **Attorneys for Appellant:** | William A. Davis, of Brown, Hay & Stephens, LLP, of Springfield and Michael Neil Lloyd, Molly L. Wiltshire, and Rachel A. Remke, of ArentFox Schiff LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carson R. Griffis and Chaya M. Citrin, Assistant Attorneys General, of counsel), for appellees Illinois Health Facilities and Services Review Board, Debra Savage, Kenneth Burnett, Stacy Grundy, Antoinette Hardy-Waller, Gary Kaatz, Monica LeGrand, Sandra Martell, Linda Rae Murray, Illinois Department of Public Health, and Amaal Tokars.<br><br>Rebecca M. Lindstrom, of Polsinelli PC, of Chicago for other appellees. |